# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KOSS CORPORATION,**
    **Plaintiff,**

    **v.**                                                                                  **Case No. 06C501**

**PILOT AIR FREIGHT CORP. and**
**PILOT AIR FREIGHT INTERNATIONAL, LTD.,**
    **Defendants and Third-party Plaintiffs,**

    **v.**

**LJUDMAN AB and POSTEN EXPRESS AB,**
    **Third-party Defendants.**

## DECISION AND ORDER

    Plaintiff Koss Corporation ("Koss"), a Wisconsin corporation, brought this diversity action against Pilot Air Freight Corporation and Pilot Air Freight International, Ltd., both Pennsylvania corporations (collectively "Pilot"), alleging that it hired Pilot to deliver goods to a Swedish company, third-party defendant Ljudman AB ("Ljudman"), and that contrary to its instructions, Pilot released the goods without first obtaining payment. Pilot responded that it followed the instructions of Ljudman's agent, third-party defendant Posten Express AB ("Posten"), a Swedish corporation, and filed third-party claims against Ljudman and Posten.

    Pilot's counsel attempted to effect service of process on Posten by mailing a third-party summons and complaint to Posten in Sweden via international registered mail. Pursuant to Fed. R. Civ. P. 12(b)(5), Posten now moves to dismiss the third-party complaint on the ground that Pilot failed to properly effect service.

## I. SERVICE

Once service is challenged, the plaintiff bears the burden of establishing that service was valid. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2001). In the present case, Pilot attempted to serve Posten abroad. Thus, the validity of the service is controlled by the Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention" or "Convention") to the extent that it applies. Volkswagen Aktiengesellschaft v. Schlunk, 466 U.S. 964, 699 (1987).

### A. The Hague Convention

The Convention provides for various methods of service abroad where, as here, both the sending country (the United States) and the receiving country (Sweden) are members. The primary means of service under the Convention is through a receiving country's "Central Authority," which receives requests for service, arranges for service and returns proofs of service. However, Article 10(a) of the Convention recites: "Provided the State of destination does not object, the present Convention shall not interfere with – (a) the freedom to send judicial documents, by postal channels, directly to persons abroad" (emphasis added).

Courts in the United States have disagreed about whether the phrase "the freedom to send judicial documents" in Article 10(a) includes within its meaning the freedom to serve judicial documents. Two lines of cases have evolved concerning Article 10(a). One line follows Bankston v. Toyota Motor Corp., 889 F.2d 172, 174 (8th Cir. 1989), in which the Eighth Circuit held that the meaning of the word "send" in Article 10(a) does not include "serve"; that is, it held that Article 10(a) permits the sending of judicial documents by mail, but only after service of process has been effected by some other means. In Nuovo Pignone v. Storman Asia M/V, 310

2

F.3d 374, 384 (5th Cir. 2002), the Fifth Circuit held similarly. The second line of cases follows Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir. 1986), in which the Second Circuit approved service of process by international mail, relying primarily on the purpose and history of the Convention to interpret the word send in Article 10(a) to include serve. In Brockmeyer, 383 F.3d at 802, the Ninth Circuit agreed with Ackermann.

The Seventh Circuit has not definitively resolved the issue. See Research Sys. Corp. v. Ipsos Publicite, 276 F.3d 914, 926 (7th Cir. 2002) (stating in dicta and without analysis that Indiana law permitted service by certified mail, "a method permitted by Article 10(a) of the Hague Convention, so long as the foreign country does not object"). District courts in this circuit are split. Compare Zisman v. Sieger, 106 F.R.D. 194, 199 (N.D. Ill. 1985) (holding that the Hague Convention permits international service by mail) and Montgomery, Zuckerman, Davis, Inc. v. Dipenbrock, 698 F. Supp. 1453, 1461 (S.D. Ind. 1988) (same), with Moreland v. Johnichi Mfg. Co., Case No. 95C4047, 1995 U.S. Dist. LEXIS 15563, at *6 (N.D. Ill Oct. 19, 1995) (following Bankston), and Gen. Elec. Music Corp. v. Samick Music Corp., Case No. 90C5590, 1991 U.S. Dist. LEXIS 11905, at *2 (N.D. Ill. Aug. 27, 1991) (same).

In interpreting a treaty, I begin with the words of the treaty and the context in which they are used. Volkswagenwerk, 486 U.S. at 699-700. I also consider the treaty's history, the negotiations leading to its adoption and the parties' practical construction of it. Id. at 700. Treaties are construed more liberally than private agreements. Id. I have considered these factors and conclude that I agree with the Second and Ninth Circuits that the meaning of send in Article 10(a) includes serve. I reach this conclusion for a number of reasons. First, throughout the Convention, the drafters used the word service interchangeably with functionally equivalent words. See EOI Corp. v. Med. Mktg., 172 F.R.D. 138, 141 (D.N.J. 1997)

3

(concluding that the drafters of the Convention varied the language of the text); Griggs Group Ltd. v. Filanto Spa, 920 F. Supp. 1100, 1105 (D. Nev. 1996) (suggesting that Bankston inaccurately implied that Article 10(a) was unique by not referring to service). I also find Article 10(a)'s location within the Convention significant. Because the Convention is dedicated solely to service of process, it would be incongruous for a subsection of Article 10(a) to refer to something other than service of process. See Griggs Group Ltd., 920 F. Supp. at 1105 (stating Article 10(a) would be anomalous if related to a subject other than service); Alexandra Amiel, Recent Developments in the Interpretation of Article 10(A) of the Hague Convention on the Service Abroad of Judicial & Extrajudicial Documents in Civil or Commercial Matters, 24 Suffolk Transnational L. Rev. 387, 401 (2001) (same).

Further, virtually all member countries of the Convention agree that the meaning of send in Article 10(a) includes serve. Brockmeyer, 383 F.2d at 802 (citing decisions of the courts of member countries). Also, to interpret send in Article 10(a) to include serve is consistent with the purpose of the Convention, which is to facilitate international service of judicial documents. Id. (citing Hague Convention Article 1); see also 1 Moore's Federal Practice § 4:52(2)(d) (Daniel Coquilette, et al., eds., 3d ed. 1997) (stating that "it comports with the broad purpose of the Hague Convention" to construe "send" to mean "service"). In addition, commentaries on the history of the negotiations leading to the Convention indicate that Article 10(a) permits service by mail. Brockmeyer, 383 F.3d at 802-03 (citing numerous commentaries including that of the leading commentator on the Convention, Bruno Ristau, as well as the views of various special commissions of experts).

In addition, the Practical Handbook on the Operation of the Hague Convention of 15 of November 1965 on Service Abroad of Judicial & Extrajudicial Documents in Civil & Commercial

4

Matters, Nov. 15, 1965, 20 U.S.T.S. 163, at 43-45 (hereinafter "Practical Handbook"), a frequently utilized source of understanding of Article 10(a), discusses the Article's drafting and negotiating history and concludes that service of process by mail is valid under the Convention. The Practical Handbook suggests that the Bankston line of cases contradicts the meaning of Article 10(a) as understood in the history of the Convention and predecessor treaties. Amiel, supra, at 406 (citing the Practical Handbook at 45).

Finally, the United States government, through the State Department, has specifically disapproved the Eight Circuit's holding in Bankston. Alan J. Kreczco, formerly the State Department's legal advisor to the Administrative Office of the United States Courts, stated that "[t]he decision of the Court of Appeals in Bankston is incorrect to the extent that the Hague Convention does not permit as a method of service the sending of a copy of the summons and complaint by registered mail to a defendant in a foreign country." Letter of Mar. 14, 1991 (quoted in U.S. Dept. of State Op. regarding the Bankston case, 30 I.L.M. 26 (1991)). I give this letter considerable weight because in interpreting treaties, courts place great weight on the executive branch's interpretations. See Griggs, 920 F. Supp. at 1106. State Department circulars also indicate that service by mail is permitted in international civil litigation. Brockmeyer, 383 F.3d at 803 (citing State Department circulars).

For the above reasons, I conclude that the word send in Article 10(a) includes serve. Thus, as long as the receiving country does not object, the Convention does not "interfere with" service of process by international mail.

**B.    Rule 4 of the Federal Rules of Civil Procedure**

This conclusion, however, does not resolve the issue in the present case. This is so because Article 10(a) does not itself affirmatively authorize service by international mail. As

5

indicated, it merely provides that the Convention "shall not interfere with" the "freedom" to use postal channels if the "State of destination" does not object to their use. Thus, for service on Posten to have been proper, it must have been authorized by Rule 4 of the Federal Rules of Civil Procedure, which governs service of process in actions in federal courts. Brockmeyer, 383 F.2d at 803-04. Fed. R. Civ. P. 4(b)(2) directs that service on a foreign corporation done outside of the United States, shall be effected "in any manner prescribed for individuals by subdivision [4](f) except personal delivery as provided in paragraph (2)(C)(i) thereof," unless a waiver of service has been obtained and filed. In the present case, Pilot did not obtain a waiver of service. Thus, to determine whether service was proper, I look to Rule 4(f). Pilot argues that it properly served Posten under Rule 4(f)(1), which provides that service abroad may be effected "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

The Hague Convention affirmatively authorizes service of process through the central authority of the receiving state. Rule 4(f)(1), by incorporating the Convention, in turn affirmatively authorizes use of a central authority. However, Rule 4(f)(1) does not go beyond the means of service affirmatively authorized by international agreements. It is undisputed that Pilot did not use either the central authority under the Hague Convention or any other internationally agreed means for accomplishing service. Rule 4(f)(1), therefore, does not provide a basis for service in the present case. See Brockmeyer, 383 F.3d at 804. Pilot does not rely on any other sections of Rule 4(f). In any case, none apply. Service by international mail is affirmatively authorized by Rule 4(f)(2)(C)(ii), which requires that service be sent by the clerk of court, using a form of mail requiring a signed receipt. Service by international mail is

6

also affirmatively authorized by Rule 4(f)(3), which requires that the mailing procedure have been specifically directed by the district court. Pilot neither followed the procedure prescribed in Rule 4(f)(2)(C)(ii) nor sought the approval of the district court under Rule 4(f)(3). Rather, Pilot simply mailed the complaint by ordinary international first-class mail. Rule 4(b) contains no affirmative authorization for such service. Thus, Pilot did not effect valid service.

## II. REMEDY

Having determined that Pilot's service was insufficient, I must consider what action to take. Motions under Rule 12(b)(5) differ somewhat from the other motions authorized by Rule 12(b) in that they offer the district court a course of action – quashing the process – other than simply dismissing the claim when the defendant's objection is sustained. Charles A. Wright & Arthur R. Miller, 5B Federal Practice & Procedure § 1354 (3d ed. 2004); see also Novak v. World Bank, 703 F.2d 1305, 1310 (D.C. Cir. 1983) (stating that a court may quash service when there is a reasonable prospect that the plaintiff will be able to effect proper service); Vorhees v. Fischer & Krecke, 697 F.2d 574, 575 (4th Cir. 1983) (stating that when a plaintiff serves improperly under the Hague Convention, the court should give the plaintiff a reasonable opportunity to validly serve under Convention); Alexander v. Unification Church of Am., 634 F.2d 673, 675 (2d Cir. 1980) (quashing service instead of dismissing claim where plaintiff had a reasonable opportunity to serve properly); Stevens v. Sec. Pac. Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir. 1976) (stating that district court has discretion to dismiss or quash service); Haley v. Simmons, 529 F.2d 78, 79 (8th Cir. 1976) (stating that court has discretion to quash service and retain the case); Temistocles Ramirez de Arellano v. Colloides Naturels Int'l, 236 F.R.D. 83, 85 (D.P.R. 2006) (stating that if defects in service are curable, court should treat a motion to dismiss as a motion to quash service of process and retain case pending effective

7

service); Baker v. Kingsley, 294 F. Supp. 2d 970, 980 (N.D. Ill 2003) (electing to quash service). Although Rule 4(m) calls for dismissal when service is not effected within 120 days, this Rule does not apply to service in a foreign country. Ballard v. Tyco Int'l, Ltd., No. 04-CV-1336-PB, 2005 U.S. Dist. LEXIS 16054 at *21-23 (D.N.H. Aug. 4, 2005).

In the present case, it appears that Pilot could properly effect service on Posten. Therefore, I will give it 120 days to do so.

### III. CONCLUSION

I will deny Posten's motion to dismiss without prejudice, quash service, and grant Pilot 120 days to properly effectuate service. It Pilot does not properly effectuate service within this allotted time, Posten may renew its motion to dismiss by letter.

**Therefore,**

**IT IS ORDERED** that Posten Express AB's motion to dismiss is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Pilot's service on Posten is **QUASHED**, and Pilot is given 120 days to effect proper service on Posten.

Dated at Milwaukee, Wisconsin, this 23 day of May, 2007.

/s_____
LYNN ADELMAN
District Judge